# DISTRICT OF COLUMBIA *v.* BROOKE.

CERTIORARI; TAXES; CONSTITUTIONAL LAW.

1. The writ of certiorari is not a writ of right, but one to be issued in the discretion of the court; and it is never issued except for the purpose of effecting substantial justice. (Following *District of Columbia* v. *Burgdorf*, 6 App. D. C. 465.)

2. In a certiorari proceeding to quash an alleged invalid tax assessment, the return of the municipal officers to the petition for the writ is as much a part of the record as the assessment records; and if the return alleges that the petitioner had notice of the assessment, although the assessment records do not so show, the allegation must be taken as true,—especially where no objection is made by the petitioner to the return, and his petition for the writ merely states that "it does not appear" that he had such notice, without denying that he had it.

3. Sec. 4 of the act of Congress of May 19, 1896 (29 Stat. at L. 125, chap. 206), providing for the drainage of lots in the District of Columbia, is unconstitutional and void in that it unjustly discriminates between resident and nonresident owners of real estate, by authorizing the District commissioners to make drainage connection with lots owned by nonresidents, after notice to them and failure by them to do so, and to assess the cost thereof against the lots as a tax; while in case of lots owned by residents no such authority is given to the commissioners, but a fine only is imposed upon them for failure to comply with the act. The object of the act is to promote public health, and not to collect fines. (Following *McGuire* v. *District of Columbia*, 24 App. D. C. 22, 65 L.R.A. 430.)

No. 1770.  Submitted April 10, 1907.  Decided May 7, 1907.

HEARING on an appeal by the Commissioners of the District of Columbia from an order of the Supreme Court of the District of Columbia quashing a tax assessment in a certiorari proceeding.                                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the supreme court of the District on the return of a writ of certiorari quashing and vacating certain proceedings taken for assessing a drainage tax under the authority of the act of May 19th, 1896 (29 Stat. at L. 125, chap. 206), entitled "An Act to Provide for the Drainage of Lots in the District of Columbia."

The petitioner, Alice Brooke, appellee here, represents that she is a resident of Silver Spring, in the State of Maryland, and the owner in fee simple of sublot 26, in square No. 770, in the District of Columbia; that said lot is improved by a row of five dwelling houses; that the District by virtue of said act has connected said premises with the water main and sewer on which said lot fronts, and has assessed the charges therefor in the sum of $470.77, and has caused said assessment to be placed against said lot on the tax roll of said District, as provided by said act.

The petition further avers that said act is unconstitutional and void because it discriminates between owners of real estate in said District, and because it is not uniform and capable of universal enforcement. The petition also avers that, assuming the validity of said act, it does not appear that petitioner was a nonresident at the time that the work was done for which said assessment was made, or "that the commissioners of said District, either as a board or individually, gave the legal and official notice to the owner of said property, as is required by said act."

A rule to show cause why the writ prayed for should not issue was granted, and a return to the rule made. This return consisted of a formal answer, signed and sworn to by the three commissioners of the District, to which was attached copies of such pertinent official papers and records as were in the custody of the District. If any objection was made to this return the record fails to state it. The record does state, however, that a hearing was had "upon the petition, the rule to show cause issued thereon, and the answer of respondent thereto." As a

result of this hearing the writ was ordered to issue. Thereupon the District adopted for its return to the writ the return to the rule to show cause, and the record fails to disclose that any objection was then made to either the form or the substance of the return. A hearing was had "on the writ of certiorari and the return thereto," which resulted in the quashing and setting aside of said tax or assessment.

*Mr. E. H. Thomas,* Corporation Counsel, and *Mr. F. H. Stephens* for the appellant.

*Mr. John Ridout* and *Mr. George C. Gertman* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

The first question presented is whether it is competent for this court to consider the sworn return of the commissioners, in determining whether the requisite notice was given petitioner. It will be observed that the petitioner does not allege in her petition that she did not have legal and sufficient notice. She merely alleges that "it does not appear" that she had such notice. The function of the writ of certiorari is to prevent, and not to promote, injustice. It is not a writ of right, but one to be issued in the discretion of the court and it is never issued except for the purpose of effecting substantial justice. *District of Columbia* v. *Burgdorf,* 6 App. D. C. 465. The writ lies to review and correct proceedings of tribunals exercising judicial or quasi-judicial powers, and that do not proceed according to the course of the common law. The records of such tribunals are frequently imperfect and lacking in completeness. The practice therefore obtains in many jurisdictions, and has obtained in this jurisdiction, of requiring a petition, and answer thereto in the form of a return, prior to granting the writ, "to enable the court to deal with the substantial justice of the case, untrammeled by merely formal and technical defects in the record." Bailey, Jurisdiction, sec. 434a, and cases cited.

In many jurisdictions great liberality is allowed in this preliminary return or answer, and in some jurisdictions even affidavits are then considered. In the case of *Tewksbury* v. *Middlesex County,* 117 Mass. 563, which was a petition for a writ of certiorari to quash the proceedings of the county commissioners in discontinuing a certain street, the court said:

"To enable the court to deal with the whole case upon the petition, it is necessary, and such is the established practice, for the commissioners or other inferior tribunal, in answer to the petition, to return a copy of their record, except when it is annexed to the petition, and if the record does not state in detail all the facts proved and rulings made, necessary for the determination of the case, to make a return or certificate, stating fully such facts and rulings so far as necessary to raise the questions of law which the petitioners desire to have revised by this court; and such return is conclusive as to all matters of fact within the jurisdiction of the inferior court, and cannot be impeached or controlled by the petitioners. As stated in *Mendon* v. *Worcester County,* 5 Allen, 13, the rights of all persons have a sufficient protection, in being intrusted to public officers clothed with important public duties, who are under oath for their faithful performance, and who cannot be supposed to have any interest or bias to misrepresent or suppress the actual facts as they took place before them."

The answer or return thus made is as much a part of the record as the official papers filed therewith, for, said the court in *Worcester & N. R. Co.* v. *Railroad Commissioners,* 118 Mass. 561:

"The answer of the respondent, when it states any facts, is in the nature, not of an allegation of a party, but of an official return, conclusive in all matters of fact, and should be signed by the members of the tribunal, and not by attorney."

The part of the return in the present case now objected to is as follows:

"Respondent says that diligent search was made by the officers and agents of the respondent to find the said petitioner within the District of Columbia, but she could not be found

there after such diligent search. That the petitioner [respondent] was informed and believed, and still believes, that the said petitioner was, at the time of the performance of the acts complained of, and is now, a citizen of the State of Maryland, and resides and did reside at Silver Hill, Maryland.

"Respondent further says that the commissioners of the District of Columbia through their officers and agents did give legal and official notice to the said petitioner, as required by the said act of Congress. That notice was given by publication as required by the said act, and said notice was also sent to the said petitioner at Silver Hill, Maryland, postage prepaid, by registered letter, on March 14, 1903, and was received by said petitioner on March 16, 1903, the registry return receipt with the signature of the petitioner, a copy of which is filed herewith as exhibit hereto and is prayed to be read as a part hereof, and the original thereof will be exhibited to the court on the hearing of said rule."

Petitioner, having discovered that the record of the proceedings leading up to the assessment was not full and complete in that it did not contain a recital of the *fact* that notice had been mailed her, attempted to take advantage of that purely technical defect. It thereupon became the duty of the commissioners in their return to the rule to state all the facts, that the court might not be misled. Upon the granting of the writ, had objection been made to the adoption by the commissioners of their preliminary return, the court undoubtedly would have permitted an amendment to the record for the purpose of supplying the defects now complained of by petitioner. Having then made no objection to the form of the return, it is too late to do so now.

The sole object of this act is to provide for connecting certain improved premises in the District with public sewers and water mains. Legislation to effect such an object is a proper and legitimate exercise of police power. While courts will consider the purpose of an act, they will not contravene certain established principles in giving it force and effect. The subject here dealt with is one easily controlled. No complicated machinery

is necessary, since there is but one thing to be done, and that is the removal of a real or potential menace to the public health by resorting to the simple expedient of connecting offending premises with the public sewer and water main. The premises controlled are within the jurisdiction where in the nature of things they are likely to remain. It would seem, therefore, that no difficulty ought to be encountered in framing an act which in its practical operation would not only be uniform, but effectual. Does the present act meet this very simple but very necessary requirement?

The 1st section of the act is free from objection, because it imposes a proper and uniform burden upon all improved lots in the District. The 2d section is also uniform in all its provisions. The 3d section prescribes the same punishment for all delinquents, and therefore is not open to objection.

The discrimination found in the 4th section we deem fatal and clearly within the ruling of this court in *McGuire* v. *District of Columbia,* 24 App. D. C. 22, 65 L.R.A. 430. That case involved the constitutionality of the snow and ice law for the District, which authorized the commissioners to remove snow and ice in front of unimproved or vacant lots at the expense of the owners thereof, but did not give the commissioners authority to remove snow and ice in front of improved property. It did provide, however, that if the tenant or occupant of improved property failed to remove the snow and ice within a given time, he should be liable to fine or imprisonment. The court said:

"It is to be noticed that, if the tenant or occupant of improved property fails to remove the snow and ice in front of his property, there is no provision in the act for the performance of the work by the commissioners of the District. Their duty of removal in this connection extends only to the sidewalks in front of unimproved or vacant lots. Here, again, is gross inequality as well as utter failure to subserve the purpose of the law; for the intervention of the Commissioners is as necessary in the one case as in the other.

"In excuse of the inequality here apparent, it is alleged that

the owners of vacant lots are often nonresidents, and, when such, cannot be reached by the process of fine and imprisonment. But this plainly is no sufficient excuse; for either the assessment authorized to be made for the failure to remove the ice and snow, and the performance of that duty by the commissioners, is a charge under the power to assess property for benefits, or it is an exercise of the police power of the State or municipality. The former will scarcely be contended, and, if it were contended, it would lack the necessary element of uniformity. The charge must be sustained, if at all, under the police power; but here, again, the element of uniformity is equally requisite, and is equally wanting in the enactment. We cannot have one law for the resident, and another for the nonresident, owner of real estate in this District."

The same discrimination is found in sec. 4 of the present act, for it provides that if "the owner or owners of any such lot be a *nonresident* or *nonresidents* of the District of Columbia, or cannot be found therein," the commissioners shall give certain notice, and, upon the failure of such owner to comply therewith may *"cause such connection to be made,"* and all the expenses thereunder *"shall be assessed as a tax against such lot."* Thus, it will be seen that the real object of the law is certain to be effectuated only in the case of nonresidents or persons who cannot be found in the District. As to the much larger number of resident owners, the law does not authorize any action by the commissioners, but merely provides that if such owners decline to comply with the act they shall be fined. Counsel for the District contend that this provision of the statute will have the effect of coercing compliance with the act, and therefore balances the above provision in reference to nonresidents. When the object of the statute is taken into consideration we do not think such a contention can be sustained.

The assessment and collection of a fine, whether the same be large or small, is not the object of this law. Its sole object is to promote the public health. The resident owner may be fined, he may in default of payment be sent to jail, but the cause of complaint is not removed. His premises continue to offend,

and, so far as this law is concerned, may continue to do so indefinitely, notwithstanding the police court proceedings. It may happen that the person in whose name the legal title to a given lot stands is financially unable to comply with this law. If he lives in the District, or can be found here, his *premises* may not be molested, but *he* may be fined. If he cannot be found here, the object of the law is easily effectuated, and the expenses connected therewith become a charge upon the lot. The title to a lot may be so defective that the owner may be unable to raise the money with which to comply with the law. If he lives here he must pay a fine or go to jail, but the commissioners must keep away from his premises. If he does not live here, the commissioners may proceed to promote the public health by connecting his premises as the law provides.

But it is needless to multiply reasons why we cannot sustain this assessment. No valid reason occurs to us why premises in the District similarly situated should not be similarly dealt with. No valid reason has been suggested why the commissioners should not be clothed with exactly the same authority over the premises of residents as the act gives them over the premises of nonresidents. The discrimination in the act being clear, and to our minds unreasonable and unjust, we are constrained to sustain the judgment of the court below quashing the tax.

For the reasons above given, the judgment is affirmed, with costs, and it is so ordered.                    *Affirmed.*

The appellant on May 23, 1907, applied for the allowance of a writ of error to the Supreme Court of the United States, and the writ was allowed on the same day.